## Case No. 11,433a.

### The PRINCETON.

### SCHUYLKILL NAV. CO. v. The PRINCETON.

### LAWTON v. The PRINCETON.

[18 Betts, D. C. MS. 126.]

District Court, S. D. New York. April 12, 1851.[1]

TOWAGE — DUTIES AND LIABILITIES OF TOWING VESSEL—COMMON CARRIERS.

[1. The owners of a towing vessel are not liable as common carriers, nor are they subject to any higher obligation than that of bailees for hire. They are not guarantors, nor are they held responsible for the utmost possible skill and prudence in executing the service. Alexander v. Greene, 3 Hill, 9, explained.]

[2. If a towing vessel be regarded as assuming the responsibilities of a common carrier, it is yet within the power of carriers by water to limit their liability by contract (New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344); and where the contract is that the towage shall be at the risk of the master or owner of the tow, the towing vessel is not liable for a loss resulting from mere error of judgment, in the absence of gross negligence or willful misconduct.]

[These were libels by the Schuylkill Navigation Company and by Alfred Lawton

---
[1] [Affirmed in Case No. 11,434.]

against the steamboat Princeton, the first being filed to recover the value of a scow lost while in tow of the steamer, and the second to recover the value of a cargo of coal, which was on board the scow, and was lost with her.]

BETTS, District Judge. These two cases were heard upon the same proofs and arguments. The libellants in the first case proceed for the value of the scow No. 350, Patrick Carroll, master, and the freight of her cargo, being owners thereof; and the libellant in the second case sues for the value of 154 2/2000 tons of coal laden on board her, and owned by him, and for the safe delivery of which in the yard he took a bill of lading from the master of the scow, with the usual saving of the perils of the sea. Notwithstanding this citation between these parties, I think the owner of the coal may, upon the equity of the matter, maintain an action against the steamer for its loss, provided the steamer took the responsibility of common carrier in respect to the scow, or the loss was occasioned by gross negligence on the part of the officers or crew of the steamer. The Princeton is owned by the Camden & Amboy Rail Road & Transportation Company, who intervene in both actions as claimants. The capacity of the respective corporations to sue and defend, and the jurisdiction of the court over the subject matter, are admitted by the pleadings. It appears also by the pleadings and proofs that it is part of the business of the Schuylkill Navigation Company to forward in their boats, scows, &c., coal from Philadelphia to New York through the Delaware & Raritan Canal, and that it was also a part of the regular employment of the steamboat to tow these vessels from New Brunswick on the Raritan to the city of New York. In November, 1847, the libellant Lawton shipped at Carbon on board the scow No. 350 the coal in question, and then received a bill of lading executed by Patrick Carroll, engaging to deliver it in New York, the dangers of the seas excepted, to the libellant or his assigns, he paying freight $1.50 per ton, less $46.20; and on the 10th of December thereafter the claimants delivered to Carroll a ticket or undertaking in printed form as follows, the date, No. of the scow, place of departure and destination, and name of the agent being written in: "Dec'r 10, 1847. To the Captains of the Steam Tow Boats of the Delaware and Raritan Canal, and the Camden and Amboy Railroad and Transportation Companies: Take in tow canal boat No. 350, Carroll, master, and tow the same from Phil. to N. Y. and back again at the risk of the master & owners—they paying for steam-towing. (Signed) L. C. Pennington, Agent." On the back was endorsed: "I agree to have the within-named boat towed according to the terms specified within. (Signed) Patrick Carroll, Master." It is proved that the scow was deeply laden, and

that she leaked, and when her master presented the above ticket to the captain of the steamer Princeton at New Brunswick the latter refused to take her in tow for those causes, but in the end, at the urgency of Carroll, consented to tow her, stipulating verbally in addition to the condition of the ticket that the towing should be at the risk of Carroll. She leaked badly on the passage, and the steamer anchored with her and the other vessels in tow, and lay over night, the captain of the steamer not considering it safe to take them across N. Y. Bay on account of her condition and the roughness of the water. The next morning they were brought to pier No. 2 on the North river, and all the vessels in tow except this scow No. 350, and the scow Orb, were then landed, these two being to be taken to the East river side of the city. It is proved that the captain of the steamer urged Carroll to have his scow landed on the North river side, as from the high wind and state of the tide it was dangerous to tow her into the East river, but Carroll insisted the agreement was to take him there, and said he would be taken at his own risk. The evidence as to the conversation between these parties, the speed of the steamer, and the good judgment and propriety of the mode in which she was managed and conducted in attempting to go into the East river, as also the state of the scow as to making water by leakage, and her depth in the water, are subjects upon which the testimony is highly discordant. I hold the evidence does not establish against the captain of the steamer any neglect of duty or omission of effort to tow the scow safely; and if any fault is imputable to him, it was the want of a correct judgment as to the manner in which it was safe to head the tide making from the East river as he entered it, and the degree of speed proper to be kept upon the steamer at that place. On striking the tide at the point where the tides from the East and North rivers meet, and which at the time in making created a swell or surge, the scow immediately sunk, taking the water over her bows, and going down head foremost. She and her cargo were totally lost.

I am inclined to the opinion, on a careful consideration of the conflicting evidence to these points, that the fair weight of it conduces to prove the officers of the steamer in attempting to carry the scow round, and in the measures actually adopted by them at the time she was brought into the East river tide, and was sunk, used all proper skill and precaution on board the steamer; but I do not discuss these topics fully, or pronounce any definite conclusion upon them, because, in my judgment, the decision of the two causes must be in favor of the claimants, upon considerations not necessarily requiring the determination of these particular facts.

I think the owners of a towing vessel have not imposed on them by law any higher obligation than that of bailees for hire, and that they certainly are not guarantors, and responsible for the utmost possible skill and prudence on the part of the towing boat in executing that service.

In these cases there is no reasonable ground upon the evidence to import wilful misconduct or gross negligence to the captain, pilot, or engineer on board the steamer. The allegations of Capt. Carroll, so far as they tend to maintain any such charge, are overborne by the evidence of other witnesses and the most which can fairly be deduced from the evidence is that there might have been some error of judgment in the mode of navigating the steamer.

It is claimed to be settled in the case of Alexander v. Greene [3 Hill, 9], decided in the court of errors of this state, that a towing vessel is a common carrier in that vocation, and chargeable with all the common-law responsibilities of a common carrier; and that she cannot, by any contract or reservation, discharge herself of that liability. I have examined the case carefully, and do not find that the senate, as a court, decided or sanctioned any such doctrine. Individual members may be regarded as entertaining those views, but the final result tends to establish entirely the contrary as the sentiment of the court. 7 Hill, 533. In that case a ticket or permit similar in substance to the one executed in this case was given by the agent of the owners, with the same qualification of the towing being at the risk of the master and owners of the vessel towed. On the trial at the circuit, evidence was offered to prove that the loss sustained by grounding the tow was occasioned by neglect in not properly conducting the towing vessel, and that her pilot was unskillful. The evidence was rejected by the judge, and the plaintiff was non-suited. The supreme court decided that the evidence was not admissible, and that on the terms of the permit, which governed the rights of the plaintiff, the defendant was exempt from liability even if the injury was incurred by his negligence. 3 Hill, 9. This judgment of the supreme court was reversed by the court of errors on the ground, so far as the opinions expressed by the members, that the owner of the towing vessel would be liable in case gross negligence was proved against him. The force and authority of the adjudication by the court of errors, if it be regarded one determining any particular point, or more than that for some cause or other the decision of the supreme court was wrong, is shaken, if not annulled, by the subsequent decision of the court of appeals, Wells v. Steam Nav. Co., 2 Comst. [2 N. Y.] 204, in which that high tribunal, with a careful attention to the case of Alexander v. Greene [supra], decided that steamboats employed as towing vessels are not common carriers and chargeable with the responsibility of such. The intimation is also thrown out that they are not bailees for hire.

It is clear, therefore, that by the law of this state the towing vessel is not now chargeable for losses received by the tow, unless owing to the fault of the one towing. So in effect the law was declared in this court, and confirmed on appeal to the circuit court. The Express [Case No. 4,598]. If it were otherwise, and the steamer employed as a towing tug takes the liability of a common carrier in respect to the tow and its cargo, since the solemn decision of the United States supreme court that carriers by water can qualify or limit their common-law liability by contract, then the obligations of the steamer cannot in this case be carried beyond the conditions of the ticket or permit, which expresses the terms of her undertaking (New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344); the rule applicable to carriers for hire, that their liability may be enlarged or limited by contract (Story, Bailm. § 33; Ang. Carr. § 59), being also now applicable to common carriers; and upon the principle of that decision as well as the one made by the court of appeals in Wells v. Steam Nav. Co., 2 Comst. [2 N. Y.] 204, the remedy of the owner of the scow and cargo must be limited to the engagement made by the permit, considering that as covering the whole service performed by the steamer. But if the engagement there made expired with the delivery of the scow in New York on the North river side, the rights of the libellants must still rest upon the verbal agreement with the master of the steamer to tow the scow round to a pier on the East river side. That agreement was also accompanied by the condition that it should be at the risk of the scow, and there is no more limitation to the power to connect a qualification to a verbal agreement, than there is to enter into the agreement itself. The service is not assumed in the character of a carrier, if in law he is one, but upon the special stipulations of the contract, which purport to exonerate him from liability for loss in any event, but may be so construed and executed by the courts as to make him responsible for his own misconduct or gross negligence, which are equivalent to fraud.

The testimony, in my judgment, clears the steamer of any just imputation of gross negligence or intentional misconduct. Ang. Carr. §§ 10, 21, 22. I think, it establishes the want of due skill and ordinary prudence in conducting the scow round the Battery. In the case of Vanderslice v. The Superior [Case No. 16,843] (U. S. Dist. Ct. Pa.), the court was inclined to disregard the rule declared in New York (Alexander v. Greene, 3 Hill, 9), and not only to hold the steam-tug to be a common carrier in her employment in towing a canal boat, but that she could not by express limitation and agreement qualify the responsibility attached by law to her in that capacity. In both those particulars it appears to me the decision is counteracted by the judgment of the circuit court for this circuit

in the case of The Express [supra], and by the decision of the court of appeals (Wells v. Steam Nav. Co., 2 Comst. [2 N. Y.] 204), as to the tug standing in the character and responsibility of a common carrier; and by that of the United States supreme court in the case of New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344, as to her right to limit her liability by contract.

I shall accordingly hold that this action cannot be maintained, and that the libel be dismissed, with costs.

[On appeal to the circuit court, the decree of this court was affirmed. Case No. 11,434.]